AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
07/17/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DVE _____ DEPUTY

United States of America

v.

IRVING RIVERA-ARCOS,
aka "Irving Arcos Rivera"

Defendant

Case No. 8:25-mj-00586-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, Donovan Manning, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date of January 4, 2023, in the county of Orange in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1326(a) | Illegal Alien Found in the United States Following Deportation |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
Complainant's signature

Donovan Manning, Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____

**DENIED - No Probable Cause**
Judge's signature

City and state: Orange, California

Hon. John D. Early, U.S. Magistrate Judge
Printed name and title

AUSA: Christina Marquez (x4061)

The Complaint alleges the offense "occurred on or about January 4, 2023" and the Affidavit avers "defendant was found in the County of Orange, in the Central District of California on January 4, 2023, based on a DHS database notification" (¶ 9(c)), but no other information is provided about this event in the Affidavit. Being "found in" the United States is a necessary element of the charge. The Affidavit's exclusive reliance on an unspecified "database notification" for this element without more is entirely conclusory, without any factual support, and is insufficient to establish probable cause for a necessary element of the charge. See Illinois v. Gates, 462 U.S. 213, 239 (1983).

**AFFIDAVIT**

I, Donovan Manning, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint against and arrest warrant for IRVING RIVERA-ARCOS also known as "IRVING ARCOS RIVERA" ("defendant"), charging him with violating Title 8, United States Code, Section 1326(a), Illegal Alien Found in the United States Following Removal.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. BACKGROUND OF SPECIAL AGENT DONOVAN MANNING

3. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been since May 2021. I am currently assigned to the Homeland Security Investigations ("HSI") Integrated Operations Group Task Force. As part of this Task Force, I investigate various immigration crimes with Department of Homeland Security ("DHS") agents and analysts, including from HSI and U.S. Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO").

4.    I am tasked with investigations into various immigration crimes in conjunction with other members of federal law enforcement, including but not limited to, members of the Department of Homeland Security who have significant experience in immigration investigations.

### III. TRAINING AND EXPERIENCE REGARDING FINGERPRINTS AND DHS DATABASES

5.    Based on my communication with DHS employees on the Task Force, and my training and experience, I know the following:

   a.    Every person has a unique set of fingerprints. I also know that unique identification numbers – including, but not limited to, Fingerprint Identification Number System ("FINS") numbers and Federal Bureau of Investigations ("FBI") numbers – can be assigned to a person's fingerprints, thereby distinguishing that person's fingerprints in law enforcement databases from another person's fingerprints. In many cases, DHS and other government agencies utilize FINS and FBI numbers to associate unique fingerprint records and information to a specific individual.

   b.    Moreover, when a person is fingerprinted by DHS agencies, such as ICE (formerly INS), those unique fingerprint identifiers are associated with an individual's unique alien number ("A-number") and alien file ("A-file"). An A-file typically contains official documentation regarding a person's deportation or removal history as well as alienage. That A-file is maintained in DHS custody, and documents and information from

that A-file are uploaded to official DHS databases that can be accessed to determine, among other things, whether a person has been removed or deported from the United States, whether that person is a foreign national, and whether that person has been lawfully admitted into the United States, pursuant to, for example, a non-immigrant visa.

6.   Generally, after an arrest for a criminal offense, a person's biometric fingerprint information is obtained and enrolled into a nationwide repository for criminal history records as part of a normal booking process.  That information is then associated with a unique identification number for the person's fingerprints, typically the FBI number, which is searchable within various law enforcement indices and comparable with other government records, including those belonging to DHS and those associated with an A-file and A-number.  A match between fingerprint identifiers can therefore be used to confirm the identity of a person associated with specific records, including immigration records indicating whether that person is amenable to immigration enforcement action.

## IV. STATEMENT OF PROBABLE CAUSE

7.   On or about July 16, 2025, the ICE Pacific Enforcement Response Center ("PERC") – an ICE center responsible for vetting and researching the arrests of suspected foreign nationals – received an electronic notification based on defendant's biometric fingerprint information that he was arrested in Orange County, within the Central District of California, for Possession of a Controlled Substance, in violation of California

Health & Safety Code Section 11377(a).  Defendant is currently in custody with the Orange County Sheriff's Department.  Based on my training and experience, it is essential to act quickly and secure a federal arrest warrant for defendant while he is in a custodial setting because once defendant is released from custody, he may abscond or evade apprehension, particularly given his prior removals and unlawful reentry.  Effectuating an arrest while defendant is in custody is materially safer for officers and defendant and presents a significantly lower risk of flight or resistance.  Arrests in a controlled environment also reduce the need for high-risk operations in the community and minimize potential harm to the public.

    8.   I reviewed printouts of a unique fingerprint identifier from the arrest referenced above and compared that against those contained in the immigration and removal records retained for defendant in DHS indices.  I have determined that these unique fingerprint identifiers are the same and therefore believe that both sets of records reference defendant, a previously removed alien.

    9.   On or about July 17, 2025, I conferred with ICE Supervisory Detention and Deportation Officer Ivan Navarro, and reviewed records associated with defendant's unique fingerprint identifier that are contained in DHS indices.  I learned the following about defendant's immigration history:

        a.   Defendant is a citizen and national of Mexico.

        b.   On or about March 18, 2020, defendant was issued an expedited removal from the United States to Mexico by

immigration officers and was physically removed from the United States to Mexico on that same day.

      c.  Since defendant's most recent physical removal from the United States noted above, defendant was found in the County of Orange, in the Central District of California on January 4, 2023, based on a DHS database notification.

      d.  There is no record of any application nor permission from the Secretary of Homeland Security or the U.S. Attorney General to re-enter the United States since defendant's most recent removal. Based upon my training and experience, as well as the training and experience of other law enforcement personnel involved in this investigation, I know that a record reflecting such application or permission would ordinarily be found within the DHS indices I reviewed.

//
//

## VI. CONCLUSION

    10.  For all the reasons described above, there is probable cause to believe that defendant has committed a violation of Title 8, United States Code, Section 1326(a), Illegal Alien Found in the United States Following Removal.

 

DONOVAN MANNING
Special Agent - ATF

Subscribed to and sworn before me this 17th day of July 2025.



HONORABLE JOHN D. EARLY
UNITED STATES MAGISTRATE JUDGE